```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA KING,

                    Plaintiff,                    06-CV-6203T

           v.                                     ORDER

CIGNA CORPORATION, CIGNA GROUP INSURANCE,
LIFE INSURANCE COMPANY OF NORTH AMERICA, and
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,

                    Defendants.
_____
```

Plaintiff Angela King brings this action seeking life insurance benefits pursuant to a group life insurance policy issued by the defendants to her late husband Kevin King (Mr. King). Specifically, the plaintiff, whose husband was shot and killed by a police officer during a stand-off with police, contends that Mr. King died as a result of accidental injuries, and therefore, as named beneficiary, she is entitled to death benefits pursuant to the policy.

Defendants move for summary judgment against the plaintiff on grounds that there are no material facts in dispute, and that defendants are entitled to judgment as a matter of law. In support of their motion, defendants contend that the plaintiff is not entitled to benefits because her husband died under circumstances that are not covered by the policy. Specifically, the defendants argue that because the policy covers "accidental" deaths, Mr. King is not entitled to benefits because his death was intentional.

Defendants further contend that because the policy excludes payment of benefits in cases where the decedent died during the commission of a felony, or in cases where the decedent intended his death, plaintiff is not entitled to benefits under the policy.  Plaintiff opposes defendants' motion and cross-moves for summary judgment.

For the reasons set forth below, I grant defendant's motion for summary judgment, and deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

Plaintiff Angela King is the widow of Kevin King, a former employee of Electronic Data Systems located in Rochester, New York. Electronic Data Systems maintained a group life insurance policy for the benefit of its employees, and Mr. King was insured pursuant to the terms of that policy.  The policy, in general, paid death benefits upon the accidental death of an insured, subject to certain, enumerated exclusions in coverage.  The policy did not pay benefits in cases where a death occurred as a result of sickness, and did not provide coverage for, inter alia, deaths that resulted from "intentionally self-inflicted injury, or any attempt thereat, while sane or insane" or in cases where the death resulted from the "commission of a felony by the insured."

On May 24, 2005, Mr. King called his friend Kevin Dennis ("Dennis") and allegedly informed Dennis that he (King) had been drinking and had taken some pills, and that he was planning to

force a police officer or officers to kill him by threatening a police officer with a gun.  Mr. King allegedly further told Dennis that he was carrying a fake gun in his pants; that he owned a .22 caliber rifle, and that he would induce a police officer to shoot him by pointing the fake gun at an officer.

Dennis called 911 to report what Mr. King had told him, and to inform the police that Mr. King was in possession of both a fake and real gun.  Emergency dispatchers had also received a call earlier that day from Catherine Lukasiewicz, who was located at Highland Hospital in the City of Rochester.  Mr. King had recently completed a rehabilitation program at the Hospital, and contacted Lukasiewicz by telephone to tell her that he was feeling "homicidal" and that "someone was going to die today."

Prior to expressing his desire to be killed by police officers, or to kill a police officer, to Dennis and Lukasiewicz, King had told the plaintiff that he wanted to be killed by police officers so that plaintiff could collect insurance money upon his death.  In a sworn statement filed by the plaintiff in Family Court on May 20, 2005, (several days before Mr. King engaged in his standoff with police) the plaintiff stated that Mr. King "wanted the police to chase him and, hopefully, kill [him] so [that plaintiff] and [her] children would be able to get some insurance money."

Upon receiving the 911 call from Dennis, officers from the Gates, New York, Police Department responded to Mr. King's apartment. Dennis, who was on the phone with Mr. King when the police arrived on the scene, heard Mr. King tell police: "I've got a gun, it's a .22 and I'm shooting." Officers who were present at the scene reported that Mr. King had threatened the officers, and repeatedly invited the officers to shoot him.

Officer John Auberger (Auberger) was one of the officers who responded to the emergency dispatch. Officer Auberger stated that he knocked on the door of Mr. King's apartment, and asked Mr. King to drop his weapon, and come out to discuss his situation. King refused to leave, and threatened to shoot Auberger in the head, allegedly stating that he knew that a shot from his rifle would not penetrate Auberger's protective vest. At one point, King quickly opened the door of his apartment and displayed a portion of what Auberger believed was an actual rifle. After Mr. King's death, it was determined that the rifle was a bb gun, not an actual .22 rifle.

For more than 20 minutes, Mr. King refused to leave his apartment. Auberger then heard what he believed was the sound of Mr. King loading his rifle. Shortly after Auberger heard this sound, Mr. King opened the door of his apartment, and, with his gun drawn and pointed at Auberger, charged towards Auberger. Fearing for his life, Auberger fatally shot Mr. King.

Following Mr. King's death, plaintiff made a claim for life insurance benefits pursuant to the insurance policy issued by the defendants. The defendants denied plaintiff's claim on grounds that Mr. King was killed during the commission of a felony, and that he intended his death, and therefore was not entitled to benefits under the policy.

## DISCUSSION

### I. The Parties' Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2nd Cir. 1997). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Annis v. County of Westchester, 136 F.3d 239, 247 (2nd Cir. 1998).

Defendants move for summary judgment contending that the plaintiff is not entitled to benefits under the policy because the

policy covers only accidental deaths, and excludes coverage for deaths that occur as the result of a commission of a felony or from intentional self-injury. Plaintiff contends that she is entitled to summary judgement because the facts demonstrate that Mr. King was not committing a felony at the time of his death, that his death was not intentionally self-inflicted, and his death was accidental.

II. Standard of Review.

"[A] denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Krauss v. Oxford Health Plans, Inc., --- F.3d ----, 2008 WL 495654, *6 (2nd Cir., February 26, 2008)(quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115(1989). In the instant case, it is undisputed that the policy at issue does not give the administrator discretionary authority to determine eligibility for benefits, and therefore, this court shall review the plan administrator's determination de novo. Under the de novo standard of review, the court gives no deference to the determination made by the plan administrator, and indeed, the court is to resolve ambiguities in the policy in favor of the insured. Katzenberg v. First Fortis Life Ins. Co., 500 F.Supp.2d 177, 193-94

(E.D.N.Y., 2007). In reviewing the plan administrator's determination, the court is limited to the administrative record relied on by the administrator, absent good cause for expanding the record to include evidence not considered by the administrator. <u>Paese v. Hartford Life and Accident Insurance Company</u>, 449 F.3d 435, 441 (2nd Cir., 2006).

The Administrative record before the plan administrator has been submitted to the Court as Exhibit C to the Defendant's Statement of Undisputed Facts ("Exhibit C")  The evidence before the Administrator with respect to plaintiff's claim for insurance benefits contained, <u>inter</u> <u>alia</u>, the following:

       1.    Copy of Voluntary Group Accident Insurance Policy (Exhibit C at pp LINA03-35)

       2.    Correspondence between CIGNA and plaintiff's attorney (Exhibit C at pp LINA47-56, 63-64, 66-81)

       4.    Correspondence between Gates Police Department and plaintiff's attorney (Exhibit C at pp LINA57-58)

       5.    June 10, 2005 Police Report Addendum re: death of Mr. King  (Exhibit C at pp LINA59-60)

       6.    Death Certificate of Kevin King. (Exhibit C at pp LINA65)

       7.    Correspondence between Gates Police Department and plaintiff including police reports and statements re: Mr. King's death. (Exhibit C at pp LINA83-92)

I limit my review to the administrative record considered by the plan administrator.

### III. Plaintiff is not entitled to benefits resulting from the Death of Mr. King.

Having reviewed the Administrative Record in this case de novo, I find that the plaintiff is not entitled to benefits for the death of her husband because Mr. King's death was not "accidental," and instead was intentional.

It is well and long established in our nation's jurisprudence that where the insured is an aggressor in an altercation, and where the injuries received by the insured as a result of his actions were both subjectively and objectively foreseeable, the injuries sustained by the insured are not accidental, but indeed, are intentional, and are therefore excluded from coverage under a policy insuring accidental injuries. See Krulls v. Hartford Acc. and Indem. Co., 535 N.Y.S.2d 157, (N.Y. App. Div. 3rd Dept. 1988)("If the insured in an accident insurance policy voluntarily and deliberately engages in a fight as the aggressor, and receives injuries which are the natural and probable consequences of his acts, there can be no recovery under the policy, since the injuries cannot be said to be produced by accident or accidental means.")(quoting 70 N.Y.Jur.2d, Insurance, § 1345, at 127); Ayers v. Contitnental Cas. Co., 955 F.Supp. 50 (W.D. Va. 1996)(insured excluded from coverage under accidental death policy where he knew

or should have known that his assault on wife would result in serious bodily injury or death); Ford v. Meropolitan Life Ins. Co., 834 F.Supp. 1272 (D. Kan. 1993)(death of insured who was killed by police while he held gun to girlfriend's head was a natural and foreseeable consequence of his actions, and thus not "accidental"); J.C. Penney Life Ins. Co. v. Moser, 490 So.2d 1275 (Fla. App. 5 Dist., 1986)(death or injury of insured who is wounded or killed by police after firing at police not "accidental" as it is reasonable and probable to expect officers to defend themselves); Sanders v. Prudential Ins. Co. of America, 697 S.W.2d 80 (Tex. App. Fort Worth, 1985)(death of insured who threatened to kill another person and approached that person while carrying a loaded rifle pointed at the person not "accidental"); Roque v. Nationwide Mut. Ins. Co., 467 A.2d 1128 (Pa. 1983)(death of insured killed while burglarizing house not "accidental" where insured threatened to kill officers, and pointed cocked gun at police); Hoffman v. Life Ins. Co. of North America, 669 P.2d 410 (Utah, 1983)(death of insured who, while using a deadly weapon, threatens to kill another, is not "accidental" as use of deadly force against the insured was the probable result of the insured's actions).

In Krulls, the New York State Appellate Division, 3rd Department, held that where the insured, armed with a deadly weapon, attacked police officers, his death was not accidental as it was reasonable to expect that such action would be met with

deadly force. <u>Krulls</u>, 535 N.Y.S.2d 157. Similarly, in <u>Sanders</u> and <u>Roque</u>, the courts held that where an insured threatened to kill another person, and pointed a gun at that person, the death of the insured was not accidental, as it was both objectively and subjectively reasonable that such actions would result in deadly force being used against the insured. <u>Sanders</u>, 697 S.W.2d 80; <u>Roque</u>, 467 A.2d 1128.

In the instant case, the administrative record clearly reveals that Mr. King intentionally engaged in conduct that resulted in his death. Specifically, the record reveals that Mr. King: advised his wife and a friend that he intended to provoke police into killing him; informed a hospital worker that he intended to kill a police officer; engaged in a stand-off with several police officers; informed the police officers engaged in the standoff that he was armed with a .22 gun; threatened the lives of officers; invited them to shoot and kill him; and finally, suddenly and abruptly came out of hiding, and charged a police officer with a gun pointed at that officer. In light of the actions taken by Mr. King, it is not only objectively reasonable to conclude that deadly force would be used against him, but it is also clear beyond doubt that Mr. King both subjectively believed that deadly force would be used against him, and indeed <u>intended</u> that such force would be used against him. Under these circumstances, Mr. King's death was not "accidental," but was instead intentional, and accordingly, coverage for his

death is excluded under the terms of Mr. King's policy. <u>See</u> <u>e.g.</u> <u>Lemay v. Life Ins. Co. of the Southwest</u>, 688 F.Supp. 1118 (W.D. La., 1988)(insurer not required to rely on specific exclusion when denying coverage of insured who was killed by gunfire after acting as an aggressor).

Plaintiff contends that the evidence contained in the record either demonstrates beyond doubt that Mr. King's death was accidental, or that, at the very least, there is a question of fact as to whether or not Mr. King's death was accidental. I find, however, that no reasonable trier of fact could conclude that Mr. King's death was accidental. The overwhelming evidence mandates a finding that he acted as an aggressor, and that he intended to be shot and killed by police. Accordingly, his death was not accidental.

Plaintiff further contends that the court should not consider portions of the administrative record because those portions contain hearsay evidence that could not be admitted in court at trial. I decline to limit the administrative record, however, as the court is charged with reviewing the record before the plan administrator de novo, not to determine whether or not the evidence before the administrator would or would not be admissible at trial.

Because I find that Mr. King's death was not accidental, I need not determine whether or not Mr. King died from self inflicted injuries, or whether or not he died during the commission of a felony.

death is excluded under the terms of Mr. King's policy. <u>See</u> <u>e.g.</u> <u>Lemay v. Life Ins. Co. of the Southwest</u>, 688 F.Supp. 1118 (W.D. La., 1988)(insurer not required to rely on specific exclusion when denying coverage of insured who was killed by gunfire after acting as an aggressor).

Plaintiff contends that the evidence contained in the record either demonstrates beyond doubt that Mr. King's death was accidental, or that, at the very least, there is a question of fact as to whether or not Mr. King's death was accidental. I find, however, that no reasonable trier of fact could conclude that Mr. King's death was accidental. The overwhelming evidence mandates a finding that he acted as an aggressor, and that he intended to be shot and killed by police. Accordingly, his death was not accidental.

Plaintiff further contends that the court should not consider portions of the administrative record because those portions contain hearsay evidence that could not be admitted in court at trial. I decline to limit the administrative record, however, as the court is charged with reviewing the record before the plan administrator de novo, not to determine whether or not the evidence before the administrator would or would not be admissible at trial.

Because I find that Mr. King's death was not accidental, I need not determine whether or not Mr. King died from self inflicted injuries, or whether or not he died during the commission of a felony.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, deny plaintiff's cross-motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                              S/ Michael A. Telesca
                              MICHAEL A. TELESCA
                         United States District Judge

Dated:    Rochester, New York
          March 24, 2008